In the code of procedure enacted in 1849, the provision enabling parties to call their associate plaintiffs and defendants, was in these words: "A party may be examined on behalf of his co-plaintiff or a co-defendant; but the examination thus taken shall not be used on behalf of the party examined." (Laws 1849, p. 692, § 397.) Before this cause was tried the provision had been amended, by inserting at the end of the first branch of the sentence, after the word "co-defendant," the following words: "as to any matter in which he is not jointlyinterested or liable with such co-plaintiff or co-defendant, andas to which a separate and not joint verdict or judgment shall berendered." (Laws 1851, p. 903, § 397.) The law stood thus at the time of the trial. The section was again amended in 1852, by changing the word shall to can, but not altering the provision in any other respect. (Laws 1852, p. 662, § 397.) This last change was made after the trial of this cause; and, if it modifies in any degree the construction of the provision, it cannot affect the decision we are now to make. But I suppose the meaning was not changed by the substitution of can for shall. As the question respecting the competency of a witness is to be determined when he is offered, which, of course, is while the trial is in progress, and before any verdict or judgment is pronounced, it would be manifestly absurd to enact that its determination should depend upon the subsequent decision of the jury or the court, upon the alleged cause of action. It was intended in both cases to refer to the legal character of the action. If it was an action in which a separate and not a joint verdict or judgment must ultimately be rendered, a defendant could call his co-defendant; and in that case only. The last amendment was designed simply to render the provision more rational and perspicuous, and not to change its meaning.
The action in this case was for an alleged assault and battery. It was for a tort; and it belongs to the class of actions which are joint or several, at the election of the party injured. The plaintiff in this case elected to deal with it as a joint trespass, and he sued all the alleged wrong-doers. If he proved them all *Page 142 
guilty, he was entitled to a joint verdict and judgment. Indeed, this is the only judgment he could have if he prevailed against all. If the jury should perversely give separate damages, it would be illegal, and the plaintiff would be entitled to judgment against all, for the largest amount of damages found against any one. (Halsey v. Woodruff, 9 Pick. 555.) The question here arose after the plaintiff had proved a prima facie case against all the defendants, and had rested. The defendants then offered to call each other, and the alleged error is that the court refused to allow them all to testify for the defense, in this action for a joint trespass. First, then, was each defendant when called, "jointly interested" with the other defendants who respectively called them, as to the alleged assault and battery? That the proposed witness was interested, is clear, if any person was. The defendants were alike interested, one precisely as much as another — the proposed witness equally with the defendant who called him. Each defendant was interested to defeat the action altogether; or, if this could not be done, to make the damages as light as possible. But was the witness jointly
interested with the defendant who called him? As the case stood, he certainly was. It was an action for a joint wrong, which, if made out as alleged, must be followed by a joint judgment; for no other could possibly be given. Then take the next word in the statute, liable. Was it a matter in which he was jointlyliable with the defendant who called him? If he was liable at all, he was jointly liable, for we have seen that if the action was sustained, there could be no several judgment against them. It would be preposterous to say that perhaps the defendant who called his co-defendant was not liable at all, that is, that he was not guilty. This, of course, could not be ascertained until the verdict was given, and the question was to be determined then, without the light which that verdict would afford. The legislature did not suppose that when a witness was called, the court would inquire, in order to determine upon his competency, how the issue ought ultimately to be decided. The expressions,jointly interested and jointly liable, refer to the nature of the *Page 143 
action. If the action sets up a joint interest or a joint liability in the defendants, they cannot be witnesses for each other. If the demand or liability sued on is several as respects the several defendants, that is, if one is sued for one thing, and another for another thing, in the same action, as is often the case, each can call the others as a witness. But the remaining language of the statute is, if possible, still more conclusive. It must be a case, or matter, "as to which a separateand not joint verdict or judgment" can be rendered. In other words, it must be such a claim, demand, or cause of action, as that a separate judgment can be rendered against the party calling the witness, and it must, moreover, be such a one that a joint judgment, against such party and the proposed witness,cannot be rendered. Here again the statute looks at the theory of the action, or matter in controversy. It assumes that the plaintiff may prevail, and not that he will be certainly defeated. It must be a case which if sustained, as alleged, will produce separate judgments, and in which a joint judgment cannot be given. This is the direct opposite of this case. Here, if the plaintiff recovers according to the complaint he must have a joint judgment, and cannot by any possibility have separate ones. It is manifestly, therefore, a case in which the defendants cannot, under this statute, give testimony for each other. If the defendants were competent witnesses for each other, in this action, co-defendants can be examined for their associates, in every possible case. It has been argued that the restriction in the amendment of 1851, is limited to actions upon joint contracts. Formerly, it is true, a plaintiff suing on an alleged joint contract must recover against all the defendants, or fail altogether in the action. But this is otherwise by the code. If in such an action it appear that one or more of the defendants are not joint contractors, as in the case of too many sued as partners, judgment passes against those who are really parties to the contract, and the others are entitled to judgment in their favor. (Code, § 274.) In such an action separate judgments may be given, if the proof inculpates one and acquits the other, precisely as in an action for a tort. The *Page 144 
action is upon a joint liability in both cases, and in both cases a joint judgment may be given; and such a judgment must be given, if the plaintiff proves his case. If it be allowable to strike out of the statute the words, "and not joint verdict or judgment can be rendered," which is indispensable to enable co-defendants in actions of tort to swear for each other, I see no difficulty in holding that co-defendants, in actions excontractu, are competent witnesses for their associates; and thus, the restriction carefully incorporated into the section in question, by the amendment of 1851, becomes entirely nugatory. These are some of the difficulties which the defendants have to encounter in construing the statute so as to meet their views. I may as well state here that when the words of the statute are plain and explicit, there is no room for the business of construction. The duty of the court is simply one of obedience. We read in the provision, that where the matter in litigation is one in which a joint verdict or judgment cannot be rendered against the defendants, they may call each other as witnesses; and it is not pretended that there is any other provision allowing them to testify for each other. How then can it be said that in an action against several for a joint trespass, where a joint verdict and judgment is a matter of course if the action is sustained, that each defendant can be sworn for the others? To me it seems inconsistent with any fair pretense of loyalty to the statute.
There is a numerous class of cases where the several defendants have no joint interest or liability, and where several judgments must be, and joint judgments cannot be rendered. Actions against the several parties to bills of exchange and promissory notes, is one instance. The holder may sue the maker and indorsers of a note, or the acceptor, drawer and indorser of a bill in one action. But their liabilities are several, and no joint judgment can be rendered. The statute applies to this case. Again, in a great many cases formerly cognizable in courts of equity, but which are now dealt with under the provisions of the code, the defendants' interests are several. In suits by a judgment *Page 145 
creditor, for instance, all the parties who have his property in their hands are made defendants, though there is no sort of privity among them, and the decree will be several against each according to his individual liability. So in bills to enforce a trust, all the parties who have interfered with the trust estate are made parties; and so also in suits to foreclose, or redeem mortgaged premises, separate and independent incumbrancers are proceeded against in the same suit. Then again there may be several plaintiffs whose interests are separate and distinct, as in the case of separate and independent creditors, legatees, next of kin and cestuis que trust, suing a trustee or personal representative of a deceased person. These persons may, and when not inconveniently numerous, must join as plaintiffs. It is to this class of cases, in my opinion, that the section under consideration refers, as it is to such cases, only, that the language applies. The section, it will be observed, allows co-plaintiffs, as well as co-defendants, to be witnesses for each other, subject to the same restrictions; but it will be impossible, I think, to imagine a case where it would not be preposterous for one plaintiff to be a witness for his associate plaintiff, unless it be one of the class last referred to. In all actions of strictly legal cognizance, the plaintiffs where there are several must have a joint interest, and there can be no recovery unless all are found entitled to judgment. Suppose a case, therefore, where several joint owners of real or personal property have occasion to prosecute several persons for an injury to such property, upon the rule contended for by the defendants in this case, all the defendants could swear for each other, while none of the plaintiffs could be heard to say a word in their own behalf.
It is supposed by the defendants' counsel that the wordmatter in the section in question, is used in the sense oftopic, feature, or circumstance. Thus, when the defendant J. McKinnon called the defendant A. McKinnon, it is argued that it was to give evidence as to the individual complicity of the former in the assault; and the inquiry is said to be whether the restrictive words in the statute can be predicated of that matter. If this were a *Page 146 
just criticism it would not aid the defendants, for assuredly a joint verdict and judgment could and must be rendered upon that particular subject, if found in favor of the plaintiff. But this is not a correct exposition of the statute. The language of the restrictive sentence is evidently taken in part from the 73d rule of the late court of chancery, which allowed the examination of a co-defendant against the complainant "as to any matter in which he was not interested." The statute in question super-adds the other words, to make it still more clear, that the right to examine was confined to the case where one of the defendants was charged with a distinct and separate liability, with which the witness had no connection, and to limit the testimony to facts relating to that separate liability. Under the rule prevailing in chancery, a defendant could never be heard as a witness where he and the defendant who called him were jointly charged with the same matter, though the case were such that one might be acquitted by the proof, and the other found responsible. (Whipple v. Lansing, 3 John. Ch. R. 612.)
Again it is argued that the provision which has been allowed to remain in the section, declaring that the testimony of a party shall not be used in his own behalf, has an important bearing upon the case. I think it has none at all. When parties are sued upon several liabilities, there are generally some grounds of defense common to them all. Take the case of separate indorsers upon a promissory note. Usury, or payment by the maker, would discharge all the parties. So persons prosecuted in one suit as separate and independent trustees of a judgment debtor, could defend themselves by proof showing the judgment paid, or otherwise discharged. These defenses might be proved by one of the defendants, for the benefit of the others, and the facts would be equally pertinent for the defense of the witness; but the provision referred to would prevent him from availing himself of it. In fact the clause is just as necessary in the way I read the statute, as upon the construction for which the defendants contend. It has no tendency to show that *Page 147 
a defendant can be a witness in respect to a matter wherein he is jointly charged with the party calling him.
It is no necessary part of the duty of a judge to vindicate the policy of the law. Were it otherwise, it would be easy to show that the maxim which forbids a party to be heard as a witness in his own case, is founded in wisdom, and ought not to be changed to suit any speculative theories of the nature of evidence. Men of ingenious minds have fancied that the truth, which is the object of all contrivances for the investigation of facts, would be more likely to be attained, if the parties were allowed to give their own account of the disputed transaction as witnesses upon their oaths. No doubt this would sometimes be the case, though my own experience, in some instances where this has been done by consent, would be any thing but favorable to the practice as a means of settling contested matters of fact. But a judicious lawmaker will not limit himself to a single aspect of the question where a long established rule is sought to be changed. In a large class of litigated cases, especially in actions like the one under review, the parties come to the trial with minds excited by interest, prejudice and passion. A system, which shall invite them to take the stand as witnesses against each other, will offer a premium to the practice of dissimulation, craftiness and perjury; and will in my judgment inflict an injury to public morals, which no fancied advantage can in any degree atone for. The notion of limiting the application of the testimony to the case of the other parties jointly charged with the witness, would be found in most cases entirely illusory. The present action furnishes as good an illustration of that point as any other. Here were five defendants charged with a joint assault and battery upon an individual. Testimony from indifferent witnesses had made out a prima facie case. It is therefore probable that a personal conflict of some character had taken place, and that the question was as to which party was the aggressor, the plaintiff or the defendants. Then it is proposed that each defendant shall give his account of the matter on oath, not professedly as evidence on his own behalf, but as a witness for the others, and the jury, *Page 148 
sitting without the conveniences for taking minutes, and not possessing habits to qualify them for making a discriminating analysis of the evidence, are expected to give a verdict upon the case of each defendant, not upon the general merits of the conflict, according to all the testimony, but by applying to each defendant, a history of the occurrence, of a different character, it may be, from that which is to be applied to each of the others. This would be sufficiently intolerable if the plaintiff's account was also to be heard: but he, unfortunately having no associate on the record, must submit to be silent and have the case determined upon the oaths of the very individuals whom he has prosecuted for an outrage upon his person.
I am in favor of affirming the judgment of the supreme court.
ALLEN, J. also delivered an opinion in favor of affirmance.
Judgment reversed.